# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GARMAN GROUP, LLC, a Nevada limited liability company; and RYAN GARMAN, an individual,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>UNIVERSITY PIPELINE, INC., a Delaware corporation; TOM UNGER, an individual; and DOES I through X, inclusive, and ROE entities I through X, inclusive,<br><br>　　　　　　Defendants. | Case No.: 2:11-cv-00184-RLH-PAL<br><br>**O R D E R**<br><br>(Motion to Dismiss, or Transfer Venue–#7; Motion to Strike–#19) |

Before the Court is Defendants University Pipeline, Inc. ("UPI") and Tom Unger's (collectively "Unger") **Motion to Dismiss, or in the alternative, Transfer Venue** (#7, filed Feb. 9, 2011) based on lack of personal jurisdiction. The Court has also considered Plaintiffs Garman Group, LLC and Ryan Garman's (collectively "Garman") Opposition (#11, filed Feb. 25, 2011), and Unger's Reply (#14, filed Mar. 7, 2011).

Additionally before the Court is Unger's **Motion to Strike** (#19, filed Mar. 9, 2011). The Court has also considered Garman's Response (#20, filed Mar. 25, 2011).

1

AO 72
(Rev. 8/82)

# BACKGROUND

On December 10, 2010, Garman filed suit in Eighth Judicial District Court for the State of Nevada ("State Court"). Unger promptly removed to this Court based on diversity jurisdiction. Garman's suit is based on the following claims: breach of contract, breach of the covenant of good faith and fair dealing, tortious breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, and unjust enrichment.

In 1999, Garman started the college marketing company, AllDorm, while in college in Santa Clara, California. Unger and Garman's business relationship began in 2005 when Unger advanced $200,000 to AllDorm to aid AllDorm through financial distress. AllDorm's financial troubles continued, however, through 2006. When AllDorm could not timely repay Unger's loan, Unger and his company, UPI, foreclosed upon the loan and UPI acquired AllDorm's assets. The Court is unclear as to whether Garman and Unger started UPI together or whether Unger previously established UPI and permitted Garman to join the company upon dissolution of AllDorm. Regardless, when UPI absorbed AllDorm's assets, Garman and Unger agreed to sell ten to twenty percent of UPI's stock to outside investors and equally divide the remaining shares.

Additionally, Garman entered into a two-year Employment Agreement and Restricted Stock Agreement with UPI. The Restricted Stock Agreement contains a forum selection clause naming San Francisco, California the sole jurisdiction and venue to litigate claims over the agreement. Unger and Garman negotiated and signed the Restricted Stock Agreement in San Francisco, California. Garman's salary was $65,000 per year with twelve percent commission on sales. At UPI, Garman was responsible for business development, marketing, and sales, whereas Unger was responsible for UPI's operations and finances. According to Garman, at the end of his two-year Employment Agreement, Unger suggested that Garman execute his UPI responsibilities under a Nevada LLC in an attempt to save on tax liability. Garman established Garman Group, LLC in Nevada and Unger renewed Garman's employment agreement, paying Garman through Garman Group rather that paying Garman as an individual.

Despite the parties' agreement for equal shareholder ownership of UPI, Unger issued himself about ten percent more of the company stock than Unger issued to Garman. After Garman discovered the inequity, Unger offered to rectify the situation by selling Garman additional stock to achieve the equal divide the parties originally agreed upon. According to Garman, Unger breached their contract by failing to initially allot the stock equally. Further, according to Garman, Unger breached the contract by refusing to pay Garman Group the expenses and commissions owed to Garman Group under the Employment Agreements. On June 28, 2010, Unger unilaterally replaced Garman at UPI without correcting the share imbalance.

Unger was and is a resident of California and his company, UPI, is incorporated in Delaware with its principal place of business in California. Garman was a resident of Nevada and his companies, AllDorm and Garman Group, LLC, were Nevada corporations. Unger has now filed a motion to dismiss for want of personal jurisdiction, or in the alternative transfer of venue. Unger has also filed a motion to strike Garman's declaration (Dkt. #17). For the reasons discussed below, the Court grants Unger's motion to transfer venue and denies Unger's motion to strike.

## DISCUSSION

### I.   Defendants' Motion to Dismiss

Unger asserts that the Court should dismiss this suit for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Further, Unger asserts that the disputed contract has a forum selection clause that names San Francisco, California as the sole forum to litigate disputes. Therefore, Unger argues, the Court should transfer or dismiss this suit for improper venue under Rule 12(b)(3). The Supreme Court has found forum selection clauses to be dispositive of personal jurisdiction issues. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991). Accordingly, the Court discusses whether the forum selection clause is valid and whether the suit should be dismissed under Rule 12(b)(3) or transferred to a proper forum.

///

///

AO 72
(Rev. 8/82)

### A. Forum Selection Clause

#### i. Legal Standard

When a disputed contract contains a forum selection clause, a court may grant a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). The United States Supreme Court has developed a strong policy in favor of enforcing forum selection clauses. *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 914 (9th Cir. 2009) (internal citations omitted). Forum selection clauses should be enforced unless enforcing the contract is unreasonable because the contract was the result of fraud, undue influence, or overweening bargaining power. *Id.* at 325. The party challenging the forum selection clause bears a heavy burden of showing that venue is proper in the chosen district. *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855, 858 (N. D. Cal. 2010). The party challenging the forum selection clause must "show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 515 (9th Cir. 1988).

#### ii. Analysis

Here, the forum selection clause in the contract between the parties reads: "This Agreement shall be governed by the laws of the State of California without giving effect to any choice or conflict of law provision and the *sole jurisdiction and venue* shall be in the state and federal courts located in San Francisco, California." (Dkt. #12, Ex. A (emphasis added)).

Garman, who is challenging the clause, has not presented evidence that suggests the contract, or the forum selection clause, resulted from fraud, undue influence, or overweening bargaining power. Garman also fails to demonstrate that complying with the forum selection clause will be "so gravely difficult and inconvenient" that he will be deprived his day in court. Rather, Garman merely argues that because Unger allegedly breached the contract, no part of the contract is enforceable. Mere breach, however, is insufficient to make a contract unenforceable. *See generally Manetti-Farrow,* 858 F.2d at 514–15 (enforcing forum selection clause in breach of contract action). Garman also has a heavy

AO 72
(Rev. 8/82)

burden of showing that it is unreasonable for the Court to enforce the parties' forum selection clause. Based on the pleadings and the strong policy in favor of enforcing forum selection clauses, the Court finds the forum selection clause reasonable and enforceable. Accordingly, venue is improper in the District of Nevada.

### B.  Dismissal or Transfer

In his motion to dismiss, Unger requested dismissal or, in the alternative, transfer to the appropriate venue. Under 28 U.S.C. § 1406(a), a court must dismiss a case if venue is improper or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Courts favor transferring cases filed in an improper venue under § 1406(a) over dismissing a case under Rule 12(b)(3) in the "interest of justice." *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Under 28 U.S.C. § 1404(a), a court may "transfer any civil action to any other district or division where it might have been brought" for the convenience of the parties and witnesses or in the interest of justice.

Since venue is improper in the District of Nevada, the Court must either dismiss or transfer the case. Although Garman filed this suit in an improper venue as determined by the forum selection clause, the interest of justice guides the Court to transfer this case to San Francisco rather than dismiss Garman's complaint. The Court finds that transfer to the United States District Court for the Northern District of California is appropriate because Garman has not shown the clause should be set aside due to fraud, undue influence, or overweening bargaining power. Accordingly, the Court will transfer this dispute to San Francisco in the Northern District of California under its § 1404(a) authority.

## II.  Defendants' Motion to Strike

### A.  Legal Standard

Under Rule 12(f) a "court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Matter is "immaterial" if it has no bearing on the controversy before the court. *In re 2TheMart.com, Inc Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Allegations are "impertinent" if they are not responsive to the issues that arise in the action and that are

5

admissible as evidence. *Id*. "Scandalous" matter is that which casts a cruelly derogatory light on a party or other person. *Id*.

**B.      Analysis**

Unger argues that the Court should strike Garman's declaration (Dkt. #17) from the record because the declaration was filed late and because the information declared violates Federal Rules of Evidence 402 and 602. Garman's declaration, however, asserts no additional substantive issues than those alleged in Garman's complaint (Dkt. #1, Ex. A), thus the fact that Garman's declaration was filed the day after Unger filed his response is irrelevant because Unger had an opportunity to respond to Garman's allegations. Further, the information in Garman's declaration is relevant to his arguments and indicates that the information declared is Garman's personal knowledge, thus the declaration violated neither Fed. R. Evid. 402 nor 602. Further, Garman's declarations do not rise to the level of immaterial, impertinent, or scandalous material. Accordingly, the Court denies Unger's Motion to Strike (#19).

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Unger's Request to Transfer Venue (#7) is GRANTED.

IT IS FURTHER ORDERED that Unger's Motion to Strike (#19) is DENIED.

The Clerk of Court is directed to transfer this suit to the United States District Court for the Northern District of California in San Francisco.

Dated: July 22, 2011.

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)